UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:13-MC-23437

FEDERAL TRADE COMMISSION,

    Petitioner,

vs.

NATIONAL PROCESSING CO., and

VANTIV, INC.,

    Respondents.
_____/

## DECLARATION OF LEONARD L. GORDON

I, Leonard L. Gordon, hereby declare as follows:

1.    I am partner in the law firm of Venable LLP and am one of the lawyers representing National Processing Company and Vantiv Inc. (collectively "Vantiv Parties") in connection with the investigation by the Federal Trade Commission ("FTC" or "Commission") regarding The Vantiv Parties' involvement with A+ Financial Center, LLC f/k/a Accelerated Accounting Services, LLC ("A+ Financial") and its principals, Christopher Miano and Dana Miano. I make this statement and declaration upon personal knowledge.

2.    From December 2009 until October 2012, NPC provided credit card processing services to A+ Financial Center, LLC f/k/a Accelerated Accounting Services, LLC ("A+ Financial") pursuant to an arms' length business relationship. A+ Financial was one of approximately 175,000 merchants for which NPC provides payment processing services. NPC is a subsidiary of Vantiv, which is a publicly traded company (NYSE: VNTV). Vantiv is the nation's third largest payment processor.

7189047-v1

3. On October 23, 2012, the FTC sued A+ Financial and its principals, Christopher Miano and Dana Miano alleging that they made illegal "robocalls" and illegally marketed interest rate reduction services in violation of the FTC Act and the Telemarketing Sales Rule ("TSR") ("A+ Litigation"). In January 2013, the FTC reached a settlement with all of the defendants in the A+ Litigation.

4. After the litigation began, NPC caused all reserves that had been established regarding the A+ Financial account to be turned over to the court-appointed receiver ("Receiver"). NPC also produced to the Receiver and to the FTC, certain documents regarding NPC's relationship with A+ Financial. On February 5, 2013, NPC and Vantiv voluntarily produced three employees for depositions where they were questioned by the Receiver and the FTC regarding the A+ Financial account.

5. On February 27, 2013, FTC Staff informed me and other lawyers at Venable LLP that FTC Staff was recommending that the Commission authorize Staff to file an amended complaint naming Vantiv and NPC as additional defendants in the A+ Litigation based on the Vantiv Parties' allegedly assisting and facilitating A+ Financial's TSR violations by providing payment processing services to A+ Financial. Ultimately, Judge Graham (who presides over the A+ Financial Litigation) gave the FTC a deadline of July 5, 2013 to indicate whether the FTC would so amend the complaint.

6. Subsequent to being informed of the FTC Staff's recommendation to add the Vantiv Parties to the A+ Litigation, executives of those companies travelled to Washington, DC numerous times to meet with two levels of management in the FTC's Bureau of Consumer Protection and with each of the individual Commissioners. In those meetings, and in papers prepared for those meetings, the Vantiv Parties explained their side of the story. In short, the

7189047-v1

Vantiv Parties explained that NPC's limited arms' length involvement with A+ Financial did not provide an adequate factual or legal basis to hold the Vantiv Parties responsible for all of the consumer injury allegedly caused by A+ Financial. The Vantiv Parties also explained that holding a payment processor responsible for all of the harm that any of the thousands of merchants in a portfolio allegedly caused could have devastating effects on the payment processing industry as a whole and ultimately harm consumers. The Vantiv Parties expended considerable money and time in this effort.

7. On July 3, 2013, FTC Staff informed me that the FTC would not be seeking to add the Vantiv Parties as defendants in the A+ Litigation, and the FTC so informed the Court on July 5, 2013. During the July 3, 2013 call, FTC Staff informed me that it was Staff's intention to request that the Commission issue Civil Investigative Demands ("CIDs") to the Vantiv Parties seeking additional information regarding the A+ Financial account. On July 24, 2013, the Commission issued The CIDs, which Staff served on July 26, 2013 ("The CIDs"). At no time prior to this did the FTC seek to obtain documents or information from Vantiv or NPC through compulsory process either in the A+ Litigation or through the FTC's Part II procedures.

8. On July 24, 2013, Judge Graham conducted a hearing regarding the FTC's settlement with A+ Financial and the Mianos. The Judge did not approve the settlement at that hearing. At the hearing, the Receiver requested that the FTC share with him any materials it might obtain from its investigation of parties that may have assisted and facilitated A+ Financial's TSR violations. FTC Staff correctly informed the Court that the FTC could not share materials obtained in response to a CID.

9. On August 1, 2013, the FTC Staff moved the court to lift the stay on discovery in the A+ Litigation to permit Staff to serve Rule 45 subpoenas. The court granted the FTC's

7189047-v1

motion on August 6, 2013, and the FTC served Rule 45 subpoenas on the Vantiv Parties that same day. The Rule 45 subpoenas seek the exact same information as The CIDs.

10. During multiple calls with FTC Staff, I and other lawyers for Vantiv have raised the issue of the impropriety of seeking information both through Rule 45 subpoenas and The CIDs. The FTC refused to withdraw either The CIDs or the subpoenas, and on August 15, 2013, the Vantiv Parties filed a Petition to Quash The CIDs with the FTC asking the FTC Commissioners either to quash The CIDs or to direct staff to withdraw the subpoenas.

11. On August 19, 2013, I sent a letter to the FTC objecting to the subpoenas pursuant to Rule 45(c)(2)(B). In the Petition to Quash, the Objection and in subsequent communications with the FTC, counsel for the Vantiv Parties made clear that Vantiv was ready and willing to produce the requested documents if the FTC would withdraw either The CIDs or the subpoenas. On August 20, 2013, just two days before the FTC filed its motion to compel, counsel for the I sent an email to the FTC stating that "[i]f the FTC withdraws the subpoenas today, Vantiv and NPC will respond to the CID on Friday, August 23, 2013." The next day in a phone call the FTC responded that it was not willing to withdraw the subpoenas because by doing so it might surrender a "tactical advantage." I then sent another email on August 21, 2013, again urging the FTC to withdraw the subpoenas and agreeing to produce all responsive documents if the FTC withdrew the subpoenas so that needless motion practice could be avoided. The FTC failed to respond and instead filed its Motion to Compel the following day.

12. In mid-March 2013, I had several conversations with FTC Staff concerning a possible tolling agreement. During one of those conversations, Bikram Bandy of the FTC stated that he did not believe a tolling agreement was actually necessary as any amendment of the

FTC's Complaint to add The Vantiv Parties as defendants in the A+ Litigation would "relate back" to the original complaint under Federal Rule of Civil Procedure 15(c).

I HEREBY DECLARE UNDER THE PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

11/4/2013

DATE

LEONARD L. GORDON